GARRETT C. ERICKSON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE SERVICE, RespondentErickson v. CommissionerDocket No. 12670-88United States Tax CourtT.C. Memo 1991-97; 1991 Tax Ct. Memo LEXIS 116; 61 T.C.M. (CCH) 2073; T.C.M. (RIA) 91097; March 5, 1991, Filed An appropriate order and decision will be entered. *116 Kevin O'Connell, for the petitioner. Ralph W. Jones, for the respondent. SHIELDS, Judge. SHIELDSMEMORANDUM FINDINGS OF FACT AND OPINION This matter is before the Court at this time on a motion by each party for summary judgment. The parties have also submitted a stipulation of facts and each party has submitted a brief in support of his respective position. In his motion respondent seeks summary judgment (1) that a notice of deficiency mailed by respondent to petitioner on April 14, 1988, constitutes a valid notice of deficiency with respect to the taxable year 1982; and (2) if the notice is valid, (a) that the duty of consistency requires petitioner to include in income in 1982 certain short-term capital losses which he deducted in 1980 with respect to sham transactions since an assessment for 1980 is barred by the statute of limitations, (b) that petitioner is not entitled to long-term capital gain deductions claimed in 1982 with respect to certain forward contracts, and (c) that petitioner is liable for additions to tax under sections 6653(a)(1) and (2), 1*117 and 6661, and to the increased interest of section 6621(c). 2In his motion petitioner seeks summary judgment (1) that the disputed notice is not a valid notice of deficiency for 1982, and (2) that he overpaid his Federal income taxes for 1982 by including gains from sham transactions. With the disputed notice, a copy of which together with its enclosures is*118 attached as Appendix A, respondent intended to determine a deficiency in and additions to petitioner's Federal income tax for 1982 in the amounts set out hereinafter. However, in the notice the taxable year is not clearly identified because in different places it is referred to as both 1982 and 1984. In his answer, respondent asserts an additional deficiency of $ 28,667 for 1982 by disallowing long-term capital gain deductions claimed by petitioner in his return for 1982 with respect to certain forward contracts and by disallowing deductions for short-term capital losses claimed in 1980 by petitioner with respect to the same contracts. In his answer, respondent also seeks increases in additions to tax under sections 6653(a)(1) and (2) and 6661. FINDINGS OF FACT Petitioner resided in Portland, Oregon, during 1980 through 1983 and at the time his petition was filed herein. Petitioner was at all relevant times employed as a commodities broker for Kerr Pacific International, Inc. For each of the years 1980, 1981, 1982, and 1983 he filed an income tax return with the Internal Revenue Service Center at Ogden, Utah. On such returns petitioner reported gains and losses from his participation*119 in a tax shelter promoted by William H. Gregory through Gregory Government Securities, Inc. (GGS) and Gregory Investment and Management, Inc. (GIM). The parties have stipulated that the gains and losses attributable to petitioner's involvement with GGS and GIM during 1980 through 1983 were generated in transactions having form but no economic substance. Their stipulation is in accordance with our determination that similar transactions conducted through the GGS and GIM investment programs constituted factual shams. See Brown v. Commissioner, 85 T.C. 968 (1985), affd. sub nom. Sochin v. Commissioner, 843 F.2d 351 (9th Cir. 1988). By letter dated November 9, 1983, respondent's agent advised petitioner that his income tax return for 1981 was being examined and requested that the agent be furnished with copies of petitioner's income tax returns for 1980 and 1982. The agent requested copies of petitioner's 1980 and 1982 returns because he suspected that petitioner may have participated in the GGS and GIM transactions during those years. Beginning with a conference on February 2, 1984, and continuing through 1984, 1985, 1986, and 1987, petitioner's*120 certified public accountant, Billy M. Morgan, Jr. (Morgan) met on several occasions with respondent's agent. During these meetings petitioner's participation in the tax shelter promoted by GGS and GIM was discussed extensively. However, from the record before us, it cannot be determined when respondent's agent first became aware of the fact that such participation commenced in 1980. Nevertheless, it is clear that Morgan did not bring a copy of petitioner's 1980 return to the first conference as requested by respondent's agent. The gains reported and the deductions for losses and expenses claimed by petitioner from his participation in the GGS and GIM shelter during 1980 through 1983 were as follows: Deductions forLosses andYearGains Expenses1980$    986$ 62,3281981$ 42,4471982$ 95,271$ 35,4341983$ 50,492$ 12,476On February 15, 1985, respondent mailed a notice of deficiency to petitioner in which the deduction for losses and expenses claimed by petitioner in 1981 was disallowed. Petitioner filed a timely petition in this Court from the notice but respondent's determination for 1981 was subsequently agreed to by petitioner after our opinion*121 in Brown v. Commissioner, supra, was rendered. The 1983 deduction was disallowed by respondent and agreed to by petitioner at the examination level for the same reason. The parties agree that a similar adjustment would be proper with respect to the deduction claimed by petitioner in 1980 but an adjustment for 1980 was barred by the statute of limitations prior to the mailing by respondent of the disputed notice on April 14, 1988. On April 14, 1988, respondent mailed to petitioner a letter in which it was stated that a deficiency in, and additions to tax, had been determined by respondent with respect to petitioner's income tax for the taxable year ended December 31, 1984 as follows: Additions to Tax DeficiencySec. 6653(a) 3Sec. 6653(a)(2)Sec. 6661$ 16,462.00$ 823.10*$ 4115.50*122 The letter was accompanied by: (1) A form 4549A entitled Income Tax Examination Changes to which was attached four typewritten pages entitled Explanation of Adjustments; (2) a Form 870 entitled Waiver of Restrictions on Assessment and Collection of Deficiency; and (3) a single page entitled Instructions. On both pages of the Form 4549A the calendar year 1984 is designated as the taxable year for which a deficiency had been determined. The same is true with respect to the last three pages of the typewritten explanation of adjustments and the Form 870. However, the first page of the typewritten explanation of adjustments refers to petitioner's "income tax return for 1982." Furthermore, the figures used in the explanation of adjustments are not the same as the corresponding figures on petitioner's 1984 return. Instead in some instances the figures used in the explanation of adjustments are the same as the figures appearing in petitioner's 1982 return. The other figures used in the explanation of adjustments are the same as those appearing in a report dated February 5, 1987, with respect to the 1982 return which report petitioner received from respondent and was discussed by Morgan*123 with respondent's agent. For example, under the heading "Adjustments to Income" an item entitled "Schedule A-Contract Cancellation" in the amount of $ 35,242 is shown. Respondent's report dated February 5, 1987, also lists as its first adjustment "Sch. A cancellation" in the amount of $ 35,242 for the proposed disallowance by respondent of losses from forward contracts promoted by Auriga Company, an organization in which petitioner did not invest. On Schedule A to petitioner's 1982 return an entry on line 26 is entitled "Investment expenses-loss on cancellation of forward contracts" in the amount of $ 35,242. In the pages entitled Explanation of Adjustments attached to the disputed notice petitioner's "taxable income per return" for the period under consideration is shown as $ 42,721 which is the same amount of taxable income reported on petitioner's 1982 return and reflected in the report of February 5, 1987. Other proposed adjustments set forth in the notice of deficiency are the same as those contained in the report of February 5, 1987. And finally, the amount of the deficiency determined in the disputed notice of $ 16,242, is the same as the "balance due" from petitioner*124 for 1982 in respondent's report. In the notice of deficiency it is stated that the deficiency determined by respondent in petitioner's income tax was due in part to the disallowance of losses claimed on forward contracts. In this connection, the Explanation of Adjustments reads in part as follows: EXPLANATION OF ADJUSTMENTS TAXPAYER: GARRETT C. ERICKSON * * * SCHEDULE A - LOSS ON CANCELLATION OF FORWARD CONTRACTS It is determined that the losses claimed by you on your income tax return for 1982 from alleged forward contracts involving government securities cannot be recognized since such alleged transactions are shams entered into for tax avoidance purposes, and lack any economic substance. Furthermore, none of the alleged transactions were completed and closed as each of the alleged transactions in question was but one step in a series of events which for tax purposes were fully integrated, and constitutes but a single transaction. In addition, such transactions do not represent a sufficient change in economic position to justify recognition for tax purposes of the losses as claimed, and the purported losses are a distortion of economic reality. It is also determined*125 that none of the losses claimed by you in connection with such transactions (whether capital or ordinary), is deductible under Section 165 of the Internal Revenue Code, because you have not established that such losses were bona fide, or that the transactions were entered into for profit within the meaning of that section, but, on the contrary, it would appear that they were entered into solely or primarily to reduce income taxes by converting short term or ordinary income to capital gain, and defer reporting the same. Moreover, the claimed losses are disallowed because they do not clearly reflect income.OPINION Under Rule 121(b) a summary judgment may be rendered if the pleadings, answers to interrogatories, depositions, admissions, and affidavits or other acceptable materials show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law. The burden of proving that there is no genuine issue of material fact is on the moving party, and any factual inference will be drawn in a manner most favorable to the party opposing the summary judgment. Jacklin v. Commissioner, 79 T.C. 340, 344 (1982); Espinoza v. Commissioner, 78 T.C. 412, 416 (1982).*126 Notice of DeficiencyThe parties agree that our jurisdiction is dependent upon the issuance by respondent of a valid notice of a determination of a deficiency and the timely filing by petitioner of a petition for a redetermination of such deficiency. Rule 13; secs. 6212, 6213; King v. Commissioner, 88 T.C. 1042, 1048 (1987), affd. 857 F.2d 676 (9th Cir. 1988). See also Pyo v. Commissioner, 83 T.C. 626, 632 (1984); Mollet v. Commissioner, 82 T.C. 618, 623 (1984), affd. without published opinion 757 F.2d 286 (11th Cir. 1985); Keeton v. Commissioner, 74 T.C. 377, 379 (1980). Section 6213 does not specify the form or the content of a notice of deficiency. It is well established, however, that no particular form is required so long as it is a communication directed by respondent to the taxpayer informing him or her that a deficiency in the taxpayer's tax liability has been determined and stating either the taxable period involved or giving sufficient information that the taxpayer reasonably cannot be deceived as to the taxable period. See Abrams v. Commissioner, 787 F.2d 939, 941 (4th Cir. 1986),*127 affg. 84 T.C. 1308 (1985); Benzvi v. Commissioner, 787 F.2d 1541, 1542 (11th Cir. 1986), affg. an order of this Court; Estate of Foster v. Commissioner, 80 T.C. 34 (1983), affd. in part and vacated in part 756 F.2d 1430 (9th Cir. 1985). In other words, as stated in Olsen v. Helvering, 88 F.2d 650, 651 (2d Cir. 1937): "[T]he notice is only to advise the person who is to pay the deficiency that the Commissioner means to assess him; anything that does this unequivocally is good enough." Consequently, the standard applicable to this case is whether petitioner knew or reasonably should have known that the disputed notice of deficiency was directed to him, that a deficiency determination had been made by respondent against him, and that the deficiency was in a certain amount and for the year 1982. Obviously this objective standard focuses on whether petitioner was justifiably misled or deceived by the mistakes in the notice. Petitioner contends that we are without jurisdiction in this proceeding because he was reasonably misled as to the period covered by the deficiency notice. Respondent contends*128 that the notice of deficiency is sufficient to confer jurisdiction upon this Court with respect to the taxable year 1982, despite the fact that the notice incorrectly refers to the taxable year 1984. In support of his challenge to our jurisdiction petitioner argues that the notice of deficiency is limited to the letter dated April 14, 1988, which is internally referred to as "a Notice of Deficiency" and does not include the attachments to such letter. Since the letter refers to the "Tax Year Ended: December 31, 1984" petitioner contends that he did not receive a deficiency notice for 1982. Petitioner's argument has no merit because, when as here, a taxpayer receives as a single document a covering letter plus attached explanatory statements, the entire document constitutes the notice of deficiency for purposes of determining whether the taxpayer was reasonably misled as to the taxable period involved. Commissioner v. Forest Glen Creamery Co., 98 F.2d 968 (7th Cir. 1938); St. Paul Bottling Co. v. Commissioner, 34 T.C. 1137 (1960). From a consideration of the entire document, and the circumstances surrounding its issuance and receipt, we *129 are satisfied that petitioner could not have been reasonably confused or misled as to the taxable year covered by the notice of deficiency. To begin with, the pages entitled "Explanation of Adjustments" refer exclusively to the year 1982 and transactions which took place in that year. Furthermore, in those places where the document incorrectly refers to 1984, the amount of the deficiency determined and of the adjustments made or proposed correspond to entries made in petitioner's 1982 return or to changes proposed with respect to the 1982 return by respondent in the report of February 5, 1987. Since petitioner's representative admittedly prepared the 1982 return and received the report and discussed its proposed changes with respondent's agent prior to the issuance of the notice we are unable to conclude that petitioner and his representative were misled into believing that 1984 and not 1982 was the year involved. Furthermore, a quick reference by petitioner to his tax returns for 1982 and 1984, or to respondent's report of February 5, 1987, would have eliminated any confusion which may have existed with respect to the taxable year. Petitioner further contends that he was reasonably*130 misled by the statement made in the report dated February 5, 1987, that respondent proposed to disallow losses from the cancellation of forward contracts promoted by the Auriga Company. Even though we have found that petitioner never dealt with contracts promoted by Auriga Company we are unable to comprehend how this error by respondent could have confused petitioner with regard to the taxable year or the amount in dispute in this case. In short, when the disputed deficiency notice is considered together with petitioner's returns for 1982 and 1984 we conclude that the similarity of the figures in these documents would have placed a reasonable person on notice that respondent had determined a deficiency for 1982 and not 1984. This is especially true in view of the fact that petitioner's 1982 return had been the subject of considerable correspondence and discussion by representatives of the parties while petitioner's return for 1984 had not been the subject of any correspondence or discussion. Consequently, from the record as a whole and by viewing all relevant facts in the light most favorable to petitioner, we are satisfied that he was not reasonably misled as to the taxable year*131 for which respondent had determined a deficiency. Accordingly, with an appropriate order respondent's motion with respect to this issue will be granted and petitioner's motion will be denied. Overpayment by PetitionerIn his motion, petitioner also contends and seeks partial summary judgment, that he overpaid his Federal income taxes for 1982 because he included in income gains attributable to his participation in admittedly sham transactions. In response to this contention respondent argues, and seeks partial summary judgment, that under the "duty of consistency" petitioner is required to include the 1982 gains in income, despite the fact that such gains resulted from transactions lacking in economic substance, because in 1980 petitioner deducted losses which resulted from similar transactions which also lacked economic substance. Respondent further contends that the long-term capital gain deductions claimed by petitioner in 1982 under section 1202 with respect to the sham transactions are not allowable because the transactions were not entered into for profit. The duty of consistency, which is sometimes referred to as "quasi-estoppel," is based on the theory that a taxpayer*132 owes the Commissioner the duty to be consistent with his tax treatment of the same or related items and will not be permitted to benefit in a later year from an error or omission made in a prior year which cannot be corrected because the statute of limitations has expired. Southern Pacific Transportation Co. v. Commissioner, 75 T.C. 497, 838-839 (1980). The application of the doctrine requires the presence of three elements. Beltzer v. United States, 495 F.2d 211, 212 (8th Cir. 1974). The elements are as follows: (1) the taxpayer has reported or made a representation with respect to an item for tax purposes in one year; (2) the Commissioner has acquiesced in or relied upon the report or representation made by the taxpayer in the earlier year; and (3) the taxpayer attempts to change the report or representation in a later year after the statute of limitations bars any adjustment for the earlier year. The first and third elements are clearly present in this case. See Herrington v. Commissioner, 854 F.2d 755 (5th Cir. 1988), affg. Glass v. Commissioner, 87 T.C. 1087 (1986). Petitioner, however, *133 argues that the duty of consistency is not applicable in this case because the second element is not present. To the contrary, respondent contends: (1) That by claiming the deductions with respect to the Gregory Government transactions on his 1980 return, petitioner represented that such transactions were real and not sham transactions; and (2) that respondent relied on such representations by petitioner and permitted the statute of limitations to expire with respect to 1980. Respondent's contention has been adopted in similar cases. E.g., Herrington v. Commissioner, supra. However, where prior to the expiration of the statute with respect to the earlier year, the Commissioner knows or has reason to know of the erroneous deduction claimed by the taxpayer in that year, the Commissioner must disallow the deduction for the year in which it is claimed rather than attempt to recoup the applicable tax in the subsequent year. Accord Joyce v. Gentsch, 141 F.2d 891, (6th Cir. 1944); see Mayfair Minerals, Inc. v. Commissioner, 56 T.C. 82, 91 (1971), affd. per curiam 456 F.2d 622 (5th Cir. 1972); accord Gmelin v. Commissioner, T.C. Memo 1988-338,*134 affd. without published opinion 891 F.2d 280 (3d Cir. 1989). From the record before us at this time we are unable to determine whether before the statute of limitations expired with respect to 1980 respondent had actual knowledge of petitioner's involvement in GGS and GIM transactions in that year. It is clear, however, that in November of 1983, more than five months before the expiration of the assessment period for 1980, respondent's agent was examining petitioner's 1981 return which contained deductions with respect to such transactions. It is also clear that in November of 1983 the agent suspected that petitioner was involved in such transactions in 1980 and as a result requested that petitioner's representative bring a copy of the 1980 return to a conference which occurred on February 2, 1984. For some unexplained reason petitioner's representative failed to bring the copy to the meeting but petitioner's involvement in the transactions were discussed. We think it is significant that respondent does not contend that Mr. Morgan made misrepresentations as to the 1980 return, or that petitioner's participation in the GGS and GIM programs during 1980 was somehow*135 hidden from his agent by petitioner or his representative. Without further evidence of the specific details of the examination we cannot find that the contents of the 1980 return were not made known to respondent's agent. See Pancoast Hotel Co. v. Commissioner, 2 T.C. 362, 370 (1943). In any event, it is apparent from the record before us that before the expiration of the statute of limitations on petitioner's 1980 return respondent possessed information sufficient to place him on notice that during 1980 petitioner was involved in the Gregory programs and that any deductions taken by petitioner with respect thereto were improper. We are satisfied, therefore, that respondent had a reasonable opportunity to take timely measures with respect to the 1980 return and that his failure to do so was not due to reliance on representations made by petitioner or his accountant. Consequently, petitioner's motion with respect to this issue will be granted and respondent's motion will be denied. Our conclusion with respect to the duty of consistency renders the other issues moot. An appropriate order and decision will be entered. Appendix ADistrict Director GARRET C. ERICKSON 6252 SOUTHWEST BARNES ROAD *136 PORTLAND, OR 97221 Date: December 31, 1984 in Reply Refer to: 411-F-90D Person to Contact: REVIEW COORDINATOR Contact Telephone Number: (503) 221-3351 EIN: 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 Tax Year Ended:DeficiencyPenalty Section6653(a) 6661December 31, 1984$ 16462.00$ 823.10$ 4115.50$ 0.00$ 0.00For returns required to be filed after December 31, 1981, if the penalty under Section 6653(a) applies, the penalty under Section 6653(a)(2) will also apply in an amount to be determined. Dear Taxpayer: We have determined that there is a deficiency (increase) in your income tax as shown above. This letter is a NOTICE OF DEFICIENCY sent to you as required by law. The enclosed statement shows how we figured the deficiency. If you want to contest this deficiency in court before making any payment, you have 90 days from the above date of this letter (150 days if addressed to you outside of the United States) to file a petition with the United States Tax Court for a redetermination of the deficiency. The petition should be filed with the United States Tax Court, 400 Second Street NW, Washington, D.C. 20217, and the copy of this letter should be attached to the petition. *137 The time in which you must file a petition with the court (90 or 150 days as the case may be) is fixed by law and the Court cannot consider your case if your petition is filed late. If this letter is addressed to both a husband and wife, and both want to petition the Tax Court, both must sign the petition or each must file a separate, signed petition. If you dispute not more than $ 10,000 for any one year, a simplified procedure is provided by the Tax Court for small tax cases. You can obtain information about this procedure, as well as a petition form you can use, by writing the Clerk of the United States Tax Court at 400 Second Street NW, Washington, D.C. 20217. You should do this promptly if you intend to file a petition with the Tax Court. If you decide not to file a petition with the Tax Court, we would appreciate if you would sign and return the enclosed waiver form. This will permit us to assess the deficiency quickly and will limit the accumulation of interest. The enclosed addressed envelope is for your convenience. If you decide not to sign and return the statement and you do not timely petition the Tax Court, the law requires us to assess and bill you for the deficiency*138 after 90 days from the above mailing date of this letter (150 days if this letter is addressed to you outside the United States). If you have any questions, please contact the person whose name and telephone number are shown above. Sincerely yours, Lawrence B. Gibbs, Commissioner By: CAROLYN LEONARD, District Director FORM 4549ADepartment of the Treasury - Internal Revenue ServiceRETURN FORMSchedule 1Income Tax Examination Changes 1040 Name and Address of TaxpayersS.S. NumberFiling Status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SINGLEGARRET C. ERICKSON6252 SOUTHWEST BARNES ROADChanges discussed withPORTLAND, OR 97221BILL MORGAN, JR., CPA1. Adjustments to IncomeYear 8412YearYeara. SCHEDULE A - CONTRACT CANCELLATION35242.000.000.00b. SCHEDULE D - FNMA CONTRACTS0.000.000.00c. 1040X - INTEREST EXPENSE-2400.000.000.00d.0.000.000.00e.0.000.000.00f.0.000.000.00g.0.000.000.002. Total Adjustments32842.000.000.003. Taxable Income per Return42721.000.000.004. Corrected Taxable Income75563.000.000.005. Tax28025.000.000.006. Alternative Tax if Applicable (from page   )7. Tax Surcharge8. Corrected Tax Liability28025.000.000.009. LESS   a. INVESTMENT TAX CREDIT124.000.000.00CREDITS   b.0.000.000.00(Specify) c.0.000.000.0010. Balance (line 8 less sum of 9a through 9c)27901.000.000.00a. Recapture of ITC0.000.000.0011. PLUS: b. Self-Employment Tax0.000.000.00c.0.000.000.0012. Total Corrected Income Tax Liability27901.000.000.0013. Total Tax per Return or Previously Adjusted11439.000.000.0014. Deficiency (line 12 less line 13)16462.0015. Overassessment (line 13 less line 12)0.000.0016. Adjustments to Prepayment Credits0.000.000.0017. Balance Due (Line 14 or 15 adj. by line 16)16462.0018. Overpayment (line 14 or 15 adjusted by 16)0.000.0019. Penalties, if any (See explanation)4938.600.000.00Other Information6653(a)     * 823.100.000.006661        4115.500.000.00 *139 Examining Officer's SignatureDistrictDateEXPLANATION OF ADJUSTMENTS TAXPAYER: GARRETT C. ERICKSON SCHEDULE A - LOSS ON CANCELLATION OF FORWARD CONTRACTS It is determined that the losses claimed by you on your income tax return for 1982 from alleged forward contracts involving government securities cannot be recognized since such alleged transactions are shams entered into for tax avoidance purposes, and lack any economic substance. Furthermore, none of the alleged transactions were completed and closed as each of the alleged transactions in question was but one step in a series of events which for tax purposes were fully integrated, and constitutes but a single transaction. In addition, such transactions do not represent a sufficient change in economic position to justify recognition for tax purposes of the losses as claimed, and the purported losses are a distortion of economic reality. It is also determined that none of the losses claimed*140 by you in connection with such transactions (whether capital or ordinary), is deductible under Section 165 of the Internal Revenue Code, because you have not established that such losses were bona fide, or that the transactions were entered into for profit within the meaning of that section, but, on the contrary, it would appear that they were entered into solely or primarily to reduce income taxes by converting short term or ordinary income to capital gain, and defer reporting the same. Moreover, the claimed losses are disallowed because they do not clearly reflect income. SCHEDULE D - FNMA CONTRACTS These gains are directly related to ordinary losses claimed in a prior year, and result from the sale and cancellation of Government Securities Contracts. The loss side of this transaction was not audited and the statute of limitations now precludes disallowing these losses. The duty of consistency precludes a taxpayer who has received a tax benefit due to his treatment of an item in a year barred by the statute of limitations from claiming the original treatment was incorrect that thus obtaining a tax advantage in a later year. ( Unvert vs. Commissioner, 72 T.C. 807, 814 (1979)).*141 The courts have held that "when a transaction and its consequences are thus projected into other tax years, there is a duty of consistency as to its' treatment, and one should be held to the consequences of the initial treatment, though inacurate, when a correction throughout is impossible AMENDED RETURN FORM 1040X - INTEREST EXPENSE This report was completed after consideration of the items shown in your claim or amended return. TAXPAYER: GARRET C. ERICKSON SECTION 6653(a) and SECTION 6653(a)(2) NEGLIGENCE PENALTIES It is determined that part of the underpayment of tax for the taxable year(s) ended December 31, 1984 is due to negligence or intentional disregard of rules and regulations. Consequently, the 5 per centum addition to the tax provided by section 6653(a) of the Internal Revenue Code of 1986 is asserted for these years; and for returns required to be filed after December 31, 1981, the addition to the tax in the amount of 50 per centum of the interest attributable to the said portion of the underpayment provided by section 6653(a)(2) of the Internal Revenue Code of 1986 is asserted for each of these years. SECTION 6661 PENALTY FOR SUBSTANTIAL UNDERSTATEMENT *142 OF TAX LIABILITY It is determined that there is a substantial understatement of income tax for the taxable year(s) shown on Schedule 1. Therefore, an addition to the tax in an amount equal to 25 percent of the underpayment attributable to such understatement is asserted as provided by section 6661 of the Internal Revenue Code. Schedule SECTION 6653(a)(2) NEGLIGENCE PENALTY The IRC section 6653(a)(2) penalty referred to herein is equal to 50 percent of the interest amount due on the portion of the underpayment for each of the years ended December 31, 1984 due to negligence or intentional disregard. This penalty is in addition to the 5 percent penalty imposed herein pursuant to IRC section 6653(a). The IRC section 6653(a)(2) penalty applies to $ 16,442.00 of the liability for the taxable years ended December 31, 1984 respectively, which is the underpayment attributable to the following adjustment(s) herein: Adjustment(s)Taxable YearDollar AmountAll Adjustments1984$ 32,842.00TAXPAYER: GARRET C. ERICKSON SECTION 6621(c) INTEREST ON SUBSTANTIAL UNDERPAYMENTS ATTRIBUTABLE TO TAX-MOTIVATED TRANSACTIONS The entire underpayment of your income tax(es) for the tax*143 year(s) December 31, 1984 is a substantial underpayment attributable to tax motivated transactions under section 6621(c) of the Internal Revenue Code. Accordingly, the annual rate of interest payable on your income taxes for the tax year(s) stated above resulting from the substantial underpayment of tax attributable to tax motivated transactions shall be 120 percent of the adjusted rate established under section 6621 of the Internal Revenue Code. FORM 870 Department of the Treasury - Internal Revenue Service Waiver of Restrictions on Assessment and Collection of Deficiency in tax and Acceptance of Overassessment Date received by Internal Revenue Service Names and address of taxpayers (Number, street, city or town, State, ZIP code) GARRET C. ERICKSON 6252 SOUTHWEST BARNES ROAD PORTLAND, OR 97221 Social Security or employer identification number 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 Increase in Tax and PenaltiesTax year endedAmount of taxPenaltyDecember 31, 1984$ 16462.00$ 4938.60*Decrease in Tax and PenaltiesTax year endedAmount of taxPenaltyExaminer's SignatureDistrictDateRemarks (if additional space is needed, use back of form) See continuation*144 sheet(s) Amount(s) of penalty(ies) under section 6653(c)(2) or 6653(b)(1)(B) will be determined if applicable. Consent to Assessment and Collection I consent to the immediate and collection of any deficiencies (increase in tax and penalties) and accept any overassessment (decrease in tax and penalties) shown above, plus any interest provided by law. I understand that by signing this waiver, I will not be able to context these years in the United States Tax Court, unless additional deficiencies are determined for these years. Signatures By Title Date Instructions General Information If you consent to the assessment of the deficiencies shown in this waiver, please sign and return the form in order to limit any interest charge and expedite the adjustment to your account. Your consent will not prevent you from filing a claim for refund (after you have paid the tax) if you later believe you are so entitled. It will not prevent us from later determining, if necessary, that you owe additional tax; nor extend the time provided by law for either action. If you later file a claim and the Service disallowed it, you may file suit for refund in a district court or in the United*145 States Court of Claims, but you may not file a petition with the United States Tax Court. We will consider this waiver a valid claim for refund or credit or any overpayment due you resulting from any decrease in tax and penalties determined by the Internal Revenue Service, shown above, provided you sign and file it within the period established by law for making such a claim. Who Must Sign If you filed jointly, both you and your spouse must sign. If this waiver is for a corporation, it should be signed with the corporation name, followed by the signatures and titles of the corporate officers authorized to sign. An attorney or agent may sign this waiver provided such action is specifically authorized by a power of attorney which, if not previously filed, must accompany this form. If this waiver is signed by a person acting in a fiduciary capacity (for example, an executor, administrator, or a trustee) Form 56, Notice Concerning Fiduciary Relationship, should, unless previously filed, accompany this form. Footnotes1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩2. Former section 6621(d) was redesignated as section 6621(c) pursuant to section 1511(c), Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2744. Respondent did not raise in either his notice of deficiency or his answer the issue of whether the increased rate of interest as provided by 6621(c) was applicable. Under section 6214(a), this Court has jurisdiction to consider a claim by respondent for an increased deficiency or addition to tax at any time before the entry of a final decision. See, e.g., Ferrill v. Commissioner, 684 F.2d 261, 265↩ (3d Cir. 1982), affg. per curiam a Memorandum Opinion of this Court. Petitioner has not objected to respondent's assertion of the increased interest under 6621(c). Respondent's additional argument will therefore be considered in this case.3. The correct section reference for the addition to tax is 6653(a)(1). Respondent correctly referred to section 6653(a)(1)↩ in his answer, and petitioner has not been prejudiced by respondent's initial use of the incorrect reference.*. 50 percent of interest due on $ 16,462.00.↩*. Section 6653(a)(2)↩ amount(s) to be determined